## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TANYA D. BALLENGER,<br>    221 WEBSTER STREET, NE, APT 1<br>    WASHINGTON, DC 20011<br><br>    Plaintiff<br><br>    v.<br><br>PROVIDENCE HOSPITAL<br>    1150 VARNUM STREET, NE<br>    WASHINGTON, DC 20017<br><br>    Serve: CT Corporation System<br>    1015 15th STREET, NW, SUITE 1000<br>    WASHINGTON, DC 20005<br><br>    and<br><br>PROVIDENCE HEALTH SERVICES, INC.<br>    1150 VARNUM STREET, NE<br>    WASHINGTON, DC 20017<br><br>    Serve: CT Corporation System<br>    1015 15th STREET, NW, SUITE 1000<br>    WASHINGTON, DC 20005<br><br>    Defendants. | Civ. No. 15-950 |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Tanya D. Ballenger, by and through her undersigned counsel, states and alleges as follows:

## INTRODUCTION

1. This is an action to secure relief for violations of rights guaranteed by the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557") and the District of Columbia Human Rights Act, D.C. Code § 2-1401 et seq. ("DCHRA"), which prohibit discrimination on the basis of gender identity by hospitals or other healthcare facilities.

2. In September 2014, Plaintiff Tanya Ballenger ("Plaintiff" or "Ms. Ballenger") made an appointment for a medical consultation at Defendants' Bariatric Care Center, seeking relief for severe back pain. Defendants, however, refused to conduct the consultation with Ms. Ballenger, telling her the doctor did not treat "transgender, transsexuals or sex-changes." By treating Ms. Ballenger with a complete lack of dignity and respect, solely due to her transgender status, Defendants forced Ms. Ballenger to endure humiliation, embarrassment and duress and needlessly prolonged the physical pain she was experiencing for which she was seeking medical attention.

3. Ms. Ballenger brings this action under Section 1557 and the DCHRA to recover damages for the harms Defendants caused her and for injunctive relief, such as increased training and changes in Defendants' policies and practices, so that in the future Defendants will provide equal, nondiscriminatory consultation and treatment to all of their patients, regardless of their gender identity or transgender status.

## PARTIES

4. Plaintiff Tanya Ballenger is a male-to-female transgender woman who resides in Washington, DC.

5. Defendant Providence Hospital ("Providence Hospital"), is a District of Columbia non-profit corporation with a registered office at 1150 Varnum Street, NE, Washington, D.C.

20017. At all times relevant, Providence Hospital owned and operated various medical practice groups with offices located at 1150 Varnum Street, NE, Washington, D.C. 20017, including the Bariatric Care Center.  Upon information and belief, Providence Hospital has complete control over the Bariatric Care Center and its employees or agents. Providence Hospital also operates under the registered trade name "Providence Health System."

6. Upon information and belief, Defendant Providence Hospital, is a healthcare organization receiving federal and state financial assistance such as credits, subsidies, or contracts of insurance.

7. At all relevant times, Defendant Providence Hospital employed, or held out to the public it was employing, over 2500 individuals including the services of doctors, nurses, and other professional and non-professional health care providers. These include the health care providers with whom Ms. Ballenger met on September 10, 2014.

8. Defendant Providence Health Services, Inc. ("PHS," together with Providence Hospital, the "Defendants") is a District of Columbia non-profit corporation with a registered office at 1150 Varnum Street, NE, Washington, D.C. 20017. Defendant PHS describes the services it provides as aiding and assisting physicians in providing medical care to patients of Providence Hospital.

9. Defendant Providence Hospital is the single corporate member of PHS and dominates and controls the operations of PHS. In so doing, the corporate form of Defendant PHS has been disregarded, Providence Hospital referring both to "Providence Hospital" and "PHS" in the operation of medical facilities.

10. Upon information and belief, Defendant PHS is a healthcare organization receiving federal and state financial assistance such as credits, subsidies, or contracts of insurance.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) over Plaintiff's claims arising under the Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557").

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claim under the DCHRA because that claim is so related to those over which this Court has original jurisdiction that they form part of the same case and controversy.

13. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in the District of Columbia and a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Columbia.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  MISTREATMENT OF TRANSGENDER INDIVIDUALS IN HEALTH CARE

14. Transgender people experience high rates of discrimination from health care providers—up to 70 percent of transgender or gender non-conforming respondents to a recent survey reported experiencing discrimination in a health care setting. Lambda Legal, *When Health Care Isn't Caring: Lambda Legal's Survey of Discrimination Against LGBT People and People with HIV*, at 9-11 (2010), http://data.lambdalegal.org/publications/downloads/whcic-report_when-health-care-isntcaring.pdf.

15. Often, transgender patients are refused care entirely. *Id.* at 11 (nearly 27 percent of respondents reported being refused care); *see also* Jaime M. Grant et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey*, at 73 (2011),

http://transequality.org/PDFs/NTDS Report.pdf (19 percent of transgender persons surveyed reported being refused care because of their transgender or gender non-conforming status, with even higher numbers among people of color in the survey).

16. Even more disturbing, transgender patients often report being subject to verbal or physical abuse at the hands of purported care-givers. Lambda Legal, *When Health Care Isn't Caring*, at 11 (more than 20 percent were subjected to harsh language and almost 8 percent reported experiencing physically rough or abusive treatment); Grant, *Injustice at Every Turn*, at 74 (28 percent reported verbal harassment and 2 percent reported being physically attacked; with those under age 18 being particularly vulnerable to physical attack).

17. Moreover, these concerning outcomes are rooted in discrimination against transgender and gender non-conforming individuals. Grant, *Injustice at Every Turn*, at 75 (showing that doctors' knowledge of a patient's transgender status significantly increased the likelihood of discrimination and abuse).

18. This bias against transgender and gender non-conforming individuals causes poorer health outcomes among transgender and gender non-conforming individuals—many transgender adults postpone or do not seek health treatment when they are injured because of fear of discrimination, and, even if they are able to find treatment, transgender patients often find that medical providers are ignorant about basic aspects of transgender health. *See id.* at 76. ("Failing to obtain preventive care is known to lead to poor long-term health outcomes.").

19. Overall, it is clear that "[m]edical providers and health systems [are] failing daily in [their] obligation to serve transgender and gender non-conforming people, instead subjecting them to mistreatment ranging from commonplace disrespect to outright violence, abuse, and the denial of human dignity." Lambda Legal, *When Health Care Isn't Caring*, at 8.

5

## II.     MS. BALLENGER

20.     Unfortunately, Ms. Ballenger's experience at Providence Hospital illustrates these injustices—which Section 1557 and the DCHRA were enacted to address. While Providence Hospital publically states that it "serve[s] all persons with joy, care, and respect, giving special attention to persons who are poor and vulnerable," Ms. Ballenger's interaction indicates that this does not include transgender and gender non-conforming individuals.

21.     Ms. Ballenger is a thirty-nine year old transgender woman. She identifies as female, but was labeled male at birth and given a male birth name.

22.     For years Ms. Ballenger had been suffering from severe mid-back pain. Seeking relief from this pain, Ms. Ballenger sought and obtained a referral from her physician at Whitman-Walker Health ("WWH") for a consultation.

23.     On August 29, 2014, Ms. Ballenger was referred by WWH to Dr. Vikisha Fripp ("Dr. Fripp") at the Bariatric Care Center at Providence Hospital. Defendant Providence Hospital represents on its website that it provides "expert care" in a variety of medical specialties including bariatric care and plastic surgery and holds out Dr. Fripp as an employee.

24.     Dr. Fripp identifies herself as an employee of Providence Hospital and as an expert in the specialty of plastic surgery. She also identifies herself as well-qualified to perform the exact procedure for which Ms. Ballenger was seeking treatment. All conduct of Dr. Fripp as alleged herein occurred within the scope of her agency and employment.

25.     An appointment for a surgical consultation was scheduled for Ms. Ballenger with Dr. Fripp at Providence Hospital for September 10, 2014. Ms. Ballenger received a confirmation of the appointment via text stating: "PHS Bariatric Care Center looks forward to seeing you."

26.     The website for Providence Hospital's bariatric and plastic surgery services states that it "welcomes" its patients with "open arms, friendly faces," and that after completion of paperwork in the "comfortable waiting area," the patient will be transferred to the "patient care area" where Dr. Fripp "will listen, evaluate and provide an honest assessment and recommendation." However, by reason of Ms. Ballenger's transgender status, her experience was quite different.

27.     Ms. Ballenger arrived at Providence Hospital's Bariatric Care Center for her appointment with Dr. Fripp on September 10, 2014. At that time, she provided the staff at the desk, upon information and belief employees of Defendants, the written referral from WWH, which identified her as transgender.

28.     While waiting for her appointment in the waiting room, Ms. Ballenger noticed several staff members behind the appointment desk snickering, staring at her, and laughing.

29.     A hospital employee eventually asked Ms. Ballenger to step into a back hall, where she advised Ms. Ballenger that Dr. Fripp would not see her. When Ms. Ballenger asked the employee as to why Dr. Fripp would not see her, she replied that Dr. Fripp did not see "transgender, transsexuals or sex-changes." When Ms. Ballenger asked why that was, the nurse stated that Dr. Fripp simply did not see such patients, and asked Ms. Ballenger to leave. Upon information and belief, these actions were undertaken upon the instruction of Dr. Fripp. The conduct of the employees alleged herein occurred within the scope of their employment with Defendants.

30.     As a result of this encounter, Ms. Ballenger experienced extreme disappointment, embarrassment, humiliation, and emotional pain and distress. Her back pain also continued as a result of being unable to obtain treatment.

### III.   PROCEDURAL HISTORY

31.   Ms. Ballenger filed a complaint with the D.C. Office of Human Rights against Providence Hospital, alleging that she was discriminated against as a result of her transgender status by a place of public accommodation, in violation of the DCHRA. On November 5, 2014, Ms. Ballenger officially filed a Charge of Discrimination against Providence Hospital with the D.C. Office of Human Rights.

32.   On June 19, 2015, Ms. Ballenger withdrew that complaint prior to filing this action.

33.   The D.C. Office of Human Rights had not issued a final determination regarding Ms. Ballenger's complaint as of the date she withdrew her complaint.

### COUNT I
### Violation of the Patient Protection and Affordable Care Act § 1557

34.   Plaintiff re-alleges the foregoing paragraphs as though fully set forth herein.

35.   Section 1557 of the Patient Protection and Affordable Care Act prohibits discrimination on the basis of sex in any health program or activity:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504 [of the Rehabilitation Act of 1973 (29 U.S.C. 794)], or such Age Discrimination Act [of 1975 (42 U.S.C. § 6101 et seq.)] shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

36. The actions of Defendants described herein, through Dr. Fripp and the employees at the Bariatric Care Center, constitute discrimination against Ms. Ballenger on the basis of her gender identity and transgender status in violation of Section 1557. Specifically, Ms. Ballenger was excluded from participation in and was denied the benefits of treatment.

37. The actions of Dr. Fripp and the other employees of the Bariatric Care Center were taken within the scope of their employment with Defendants, and Defendants are vicariously liable for the alleged acts of Dr. Fripp and the other employees of the Bariatric Care Center.

38. Other persons at Providence Hospital and PHS were aware of Dr. Fripp's discriminatory acts and acted with deliberate indifference to the discrimination.

39. Defendants discriminated against Ms. Ballenger on the basis of her transgender status, which is a protected status under Title IX and thus, under Section 1557.

40. Defendants' actions were malicious, wanton, reckless, and willful, and taken with deliberate disregard for, or deliberate or reckless indifference to, Plaintiff's rights.

41. Ms. Ballenger has been damaged as a result of Defendants' actions in an amount to be determined at trial, including but not limited to physical pain, embarrassment, humiliation, emotional pain and anguish, the loss of enjoyment of life, and violation of her dignity.

## COUNT II
**Violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.31**

42. Plaintiff re-alleges the foregoing paragraphs as though fully set forth herein.

43. The District of Columbia Human Rights Act, D.C. Code § 2-1402.31, provides that:

> It shall be an unfair discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on actual or perceived: . . . sexual orientation, gender identity or expression . . . of any

       individual: (1) to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations . . .

44.     Plaintiff is a transgender woman and is therefore protected from discrimination under the DCHRA.

45.     Providence and PHS are places of public accommodation under the DCHRA.

46.     The actions of Dr. Fripp and the other employees of the Bariatric Care Center were taken within the scope of their employment with Defendants, and Defendants are vicariously liable for the alleged acts of Dr. Fripp and the other employees of the Bariatric Care Center.

47.     Other persons at Providence Hospital and PHS were aware of Dr. Fripp's discriminatory acts and acted with deliberate indifference to the discrimination.

48.     The actions of Defendants described herein, including those of Dr. Fripp and the other employees of the Defendants, constitute discrimination against Plaintiff on the basis of her gender identity and transgender status, in violation of the DCHRA. Specifically, Ms. Ballenger was denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Providence Hospital and the Bariatric Care Center, places of public accommodation.

49.     Defendants' actions were malicious, wanton, reckless, and willful, and taken with deliberate disregard for, or deliberate or reckless indifference to, Plaintiff's rights.

50.     Ms. Ballenger has been damaged as a result of Defendants' actions in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

A. That the practices of Defendants complained of herein be adjudged, decreed and declared to be in violation of the rights secured to the Plaintiff by the Patient Protection and Affordable Care Act § 1557 and the D.C. Human Rights Act, D.C. Code § 2-1402.01 *et seq*.

B. That a permanent injunction be issued requiring that Defendants adopt practices in conformity with the requirements of the Patient Protection and Affordable Care Act § 1557 and D.C. Code § 2-1402.01 *et seq.*, such as ordering appropriate training on providing care to transgender patients with dignity and respect, and making needed changes in policies and procedures.

C. That a permanent injunction be issued prohibiting Defendants from engaging in the practices complained of herein.

D. That Plaintiff be awarded compensatory damages in an amount to be established at trial.

E. That Plaintiff be awarded punitive damages.

F. That the Court retain jurisdiction until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

G. That Plaintiff be awarded her reasonable attorneys' fees and the costs and expenses of this action.

H. That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate, just, and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted this 19th day of June, 2015

/s/ David C. Smith
DAVID C. SMITH
D.C. Bar No. 998932
CATHERINE F. MUNSON
D.C. Bar No. 985717
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 508-5800

*Attorneys for Plaintiff*